**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIAM SPUDIS, JR.,

                  Plaintiff,

    v.

METRO MATTRESS CORPORATION,
et al.,

                Defendants.

CIVIL ACTION NO. 3:24-CV-00822

(MEHALCHICK, J.)

**MEMORANDUM**

On April 28, 2024, Plaintiff William Spudis Jr., ("Spudis") initiated this action by filing a complaint in the Lackawanna County Court of Common Pleas. (Doc. 1-2; Doc. 1-3). On May 17, 2024, Defendants David Adler ("Adler") and Metro Mattress Corporation ("Metro") (together, "Defendants") removed the action to the Court. (Doc. 1). On May 24, 2024, Defendants filed a motion to dismiss for failure to state a claim. (Doc. 3). For the following reasons, Defendants' motion is granted in part and denied in part.

**I.**    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the complaint and, for the purposes of the instant motion, is taken as true. (Doc. 1-3). Metro is a mattress retailer. (Doc. 1-3, at 4). Adler is the Chairman and Owner of Metro. (Doc. 1-3, at 5). On or about October 5, 2021, Spudis and Metro entered into an employment agreement (the "Agreement") which Adler signed in his capacity as Chairman and Owner of Metro. (Doc. 1-3, at 5). The Agreement applied retroactively and provided for a five-year term of employment spanning between January 1, 2021, and December 31, 2025. (Doc. 1-3, at 5). Under the Agreement, Spudis served as Metro's President and CEO and also performed executive services for an affiliate company, Pennsylvania Bedding, Inc. (Doc. 1-3, at 6). The employment agreement allowed for Metro

to terminate Spudis "for cause" with cause defined as 1) failure to perform the duties of his position, 2) intentional acts of dishonesty, 3) conviction of a felony involving moral turpitude, 4) illegal drug use or excessive alcohol use in the workplace, 5) intentional and willful misconduct that may subject Metro to criminal or civil liability, 6) breaches of the duty of loyalty, 7) willful disregard for Metro's policies and procedures, 8) breach of any material terms under the Agreement, and/or 9) insubordination or deliberate refusal to follow the reasonable instructions of Metro or its owner. (Doc. 1-3, at 6-7). If Metro terminated Spudis for failure to perform his duties, the Agreement required thirty days' notice and the opportunity to cure. (Doc. 1-3, at 7). Under the Agreement, if Metro terminated Spudis without cause, Spudis would be eligible to receive severance of two years of his base salary plus a continuation of health insurance "in exchange for a Separation Agreement and Release provided by [Metro]." (Doc. 1-3, at 7). The Agreement also provided that all final hiring decisions for Metro were to be made by Spudis. (Doc. 1-3, at 8).

On February 27, 2024, Adler informed Spudis that Metro hired a new employee who "would be placed in a position above [Spudis]." (Doc. 1-3, at 8). Adler made this decision, without Spudis even though under the Agreement, Spudis was responsible for all of Metro's hiring decisions. (Doc. 1-3, at 8). Spudis requested sick leave on February 28, 2024, and requested to be off between February 29, 2024, and March 5, 2024. (Doc. 1-3, at 8). On February 29, 2024, while Spudis was on medical leave, Adler informed Spudis that he was no longer employed as President and CEO of Metro. (Doc. 1-3, at 8). On March 4, 2024, Metro locked Spudis out of his email. (Doc. 1-3, at 8-9). Metro's human resources informed Spudis that he may continue to work for Metro "in a different capacity" and that if he would like to continue working at Metro, he must notify them by March 5, 2024. (Doc. 1-3, at 8-9).

2

On March 25, 2024, Spudis returned from a pre-planned family vacation, and notified human resources that he required sick leave. (Doc. 1-3, at 9). On March 27, 2025, human resources informed Spudis that Metro was terminating certain benefits and canceling his corporate credit cards. (Doc. 1-3, at 9). Spudis asked human resources about the status of his employment on March 27 and 28, 2024 but did not receive a response. (Doc. 1-3, at 9). On March 29, 2024, Metro informed Spudis that it terminated him as President and CEO and threatened that if he did not abandon his Family and Medical Leave Act ("FMLA") leave requests he would be terminated from the company all together. (Doc. 1-3, at 9). Metro did not terminate Spudis for cause as defined by the Agreement. (Doc. 1-3, at 10).

Spudis alleges three counts under state and federal law. (Doc. 1-3, at 10-15). In Count I, Spudis alleges Metro is liable for breach of contract for breaching the Agreement. (Doc. 1-3, at 10-11). In Count II, Spudis alleges Defendants are liable for interference and retaliation under the FMLA. (Doc. 1-3, at 11-14). In Count III, Spudis alleges Defendants are liable under the Pennsylvania Wage Payment and Collection Law ("WPCL"). (Doc. 1-3, at 14).

On May 24, 2024, Defendants filed a motion to dismiss for failure to state a claim. (Doc. 3). On June 7, 2024, Defendants filed a brief in support. (Doc. 4). On June 21, 2024, Spudis filed a brief in opposition. (Doc. 7). On July 5, 2024, Defendants filed a reply brief. (Doc. 8). The Court stayed this action on September 10, 2024, pending the outcome of Metro's bankruptcy proceedings before the United States Bankruptcy Court for the Northern District of New York. (Doc. 11). On February 6, 2026, Defendants informed the Court that the bankruptcy court dismissed the bankruptcy case. (Doc. 28). On February 13, 2025, the Court lifted the stay. (Doc. 29). Accordingly, this matter is ripe and ready for disposition.

II.    **LEGAL STANDARD**

3

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

Defendants aver that Spudis fails to state a claim for breach of contract, under the FMLA, or under the WPCL. (Doc. 4, at 14-25).

#### A. SPUDIS STATES A CLAIM FOR BREACH OF CONTRACT.

In Count I, Spudis alleges Metro is liable for breach of contract because it breached the Agreement by 1) terminating him without following the Agreement's termination provisions such as the Agreement's severance clause and 2) hiring a new employee without consulting him. (Doc. 1-3, at 10-11). Defendants aver that Metro did not breach the Agreement by terminating Spudis because it did not terminate him, but rather, assigned him to a new position. (Doc. 4, at 15-16). Defendants further argue that even if Metro did

terminate Spudis, the Agreement's severance clause only applies where Spudis enters into a Separation Agreement and Release, and Spudis did not even send Metro such an agreement. (Doc. 4, at 16). Finally, Defendants aver that Metro did not violate the terms of the Agreement by hiring a new employee because the Agreement states that Spudis may report to "[another] individual as [Adler] may from time-to-time determine as the person to whom [Spudis] shall report," and it hired someone to fulfil that role. (Doc. 4, at 16). Spudis counters that he was terminated because he alleges that on February 29, 2024, Adler informed him that he was "no longer employed as President and CEO." (Doc. 7, at 16-17). Spudis further contends that he alleges he was terminated without cause and under the Agreement, Metro was required to draft and send Spudis a Separation Agreement which Metro did not do. (Doc. 7, at 18-20). Spudis finally argues that it is irrelevant that the Agreement stipulates that Adler may designate another individual whom Spudis must report to because the agreement unambiguously states that Spudis is responsible for all hiring decisions at Metro. (Doc. 7, at 18).

To state a claim for breach of contract under Pennsylvania law,[1] "a plaintiff [must] plead (1) the existence of a contract (including its essential terms), (2) a breach of the contract, and (3) damages." *Cessna v. Rea Energy Coop., Inc.*, 753 F. App'x 124, 1128 (3d Cir. 2018) (nonprecedential). While evaluating a motion to dismiss a breach of contract claim involving a written contract, a court may consider the text of the contract if a copy is attached to the complaint, or the text of an undisputedly authentic copy is attached to a motion to dismiss. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010); *see also Massey-*

---

[1] The parties agree that Pennsylvania law applies. (Doc. 4, at 14; Doc. 7, at 19).

*Campbell v. Bridgecrest Acceptance Corp.*, No. CV 24-4146, 2025 WL 2808911, at *3 n.2 (E.D. Pa. Oct. 2, 2025).

The parties agree that the Agreement exists as a binding contract, but dispute whether Metro breached any duties imposed by the Agreement. (Doc. 4, at 14-16; Doc. 7, at 16-20). When interpreting the duties imposed by a written contract, the Court must first look to the contract's plain language. *See Lesko v. Frankford Hosp.-Bucks Cnty.*, 609 Pa. 115, 122 (2011); *see also Li v. Univ. of Scranton*, No. 3:21-CV-00868, 2021 WL 6197822, at *4 (M.D. Pa. Dec. 31, 2021). "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself[,] and a meaning cannot be given to it other than that expressed." *Lesko*, 609 Pa. at 123 (citing *Steuart v. McChesney*, 498 Pa. 45, 48 (1982)). To plead that a breach of duty caused damages, the defendant must only allege with certainty that there were damages and does not have to plead the precise amount. *See Rizzo v. Haines,* 520 Pa. 484, 505 (1989) (noting that a breach of contract claim requires more than speculative damages but also that "'damages are speculative only if the uncertainty concerns the *fact* of damages rather than the amount'" (quoting *Pashak v. Barish*, 303 Pa. Super. 559, 561 (1982)); *see also Moses Taylor Found. v. Coverys*, No. 3:20-CV-00990, 2021 WL 1017371, at *3 (M.D. Pa. Mar. 17, 2021).

The Court may rely on the text of the Agreement because it is attached to the complaint and both parties refer to it. (Doc. 1-3, at 19-34; Doc. 4, at 15-17; Doc. 7, at 16-20); *see Cooper*, 374 F. App'x at 253 n.3; *see also Massey-Campbell*, 2025 WL 2808911, at *3 n.2. The Agreement provides that Spudis agrees to serve Metro "on a full time and exclusive basis as [Metro's] President & CEO." (Doc. 1-3, at 19). The Agreement lists various duties and responsibilities Spudis shall hold as President and CEO and provides "[a]ll final hiring

decision for [Metro], including as to members of the owner's family, shall be made by [Spudis]." (Doc. 1-3, at 20). The Agreement clarifies that it "shall initially be for a term of five (5) years, commencing January 1, 2021, though December 31, 2025 . . . unless terminated earlier in accordance with the provisions of this Paragraph." (Doc. 1-3, at 24). The Agreement further states that Spudis may be terminated by the company for cause based on a defined list of causes or due to a change of control of Metro. (Doc. 1-3, at 25). The Agreement has a severance provision which states:

> In the event that [Spudis's] employment is terminated by [Metro] without Cause, as that term is defined . . . then [Spudis] shall be eligible to receive severance only in exchange for entering into a binding Separation Agreement and Release, in a form acceptable to [Metro] . . . If [Spudis] enters into a binding Separation Agreement and Release, in a form acceptable to Company, [Spudis] shall be eligible to receive severance in an amount equal to his Base Annual Salary . . . for a period of twenty-four (24) months following the date of [Spudis's] termination.

> (Doc. 1-3, at 30).

Spudis alleges that on February 29, 2024, Alder informed him that Spudis was "no longer employed as the President and CEO of [Metro]."[2] (Doc. 1-3, at 8). Defendants aver

---

[2] In their reply brief, Defendants argue that this is an inaccurate representation of the February 29, 2024, communications between Spudis and Adler based on an email they attach to their reply brief. (Doc. 8, at 9-10; Doc. 8-1). The Court will not consider this email. Courts do not consider arguments presented for the first time in a reply brief and may decline to consider exhibits attached, for the first time, to a reply brief. *See Williams v. Amazon, Inc.*, 573 F. Supp. 3d 971, 975 (E.D. Pa. 2021) (noting that arguments raised for the first time in a reply brief are generally deemed waived); *see also Delp v. Hexcel Corp.*, No. 3:25-CV-00233, 2025 WL 2618766, at *10 n.5 (M.D. Pa. Sept. 10, 2025) (declining to consider documents attached to a motion to dismiss reply brief which could have been attached to the motion or brief in support). Defendants did not present any arguments disputing the accuracy of the complaint's characterization of the communications between Spudis and Adler or attach the email as an exhibit. (Doc. 4). Further, even if Defendants did attach the email to their initial motion or brief in support, the Court could not consider it because the Court can only consider undisputedly authentic documents referenced by a complaint and central to the claims. *See Cooper*, 374 F. App'x at 253 n.3. The complaint does not reference an email, it only states that Adler "contacted" Spudis. (Doc. 1-3, at 8). The Court cannot assume, at the pleadings stage,

8

that this communication did not constitute termination or any other breach of the Agreement because Metro told Spudis he could no longer serve as President and CEO but could serve in another role. (Doc. 4, at 15-16). However, there is no provision in the Agreement regarding demotion and the Agreement specifically states that Spudis shall serve as "President & CEO." (Doc. 1-3, at 19). The Agreement further states that Spudis shall serve in that role for a five-year term unless Metro terminates him pursuant to the Agreement's termination provisions. (Doc. 1-3, at 19, 24). Spudis alleges that rather than following one of the listed termination provisions, Metro ignored Spudis's questions regarding the status of his employment and attempted to force him to accept another role at Metro. (Doc. 1-3, at 8-10). Accepting these allegations as true, Metro breached the Agreement because Metro's actions as alleged do not comply with any of the Agreement's termination provisions. (Doc. 1-3, at 19, 24, 30). Spudis also alleges Metro further violated the terms of the agreement by hiring another employee without informing Spudis and the fact that the agreement contemplates that Spudis may report to unspecified individuals does not change the fact that the Agreement specifically states that Spudis has the final say regarding all hiring decisions.[3] (Doc. 1-3, at 8, 20).

---

that this email constitutes the entirety of communications between Spudis and Adler and instead, must take the allegations in the complaint as true. *See Peterson v. Allegheny Cnty.*, No. 2:21-CV-00078, 2022 WL 280948, at *24 (W.D. Pa. Jan. 31, 2022) (declining to consider emails attached to a motion to dismiss not referenced by the complaint); *see also Ike v. Travelers Prop. Cas. Co. of Am.*, No. CV 23-4498, 2025 WL 2553487, at *3 n.6 (E.D. Pa. Sept. 4, 2025) (declining the same).

[3] Defendants aver in their reply brief that the Court should not read the Agreement to mean that Spudis's hiring authority applies to hiring his superiors because such a reading would lead to an absurd result. (Doc. 8, at 8-9). "[G]enerally, absent fraud, illegality, unconscionability or mistake, parties are bound by the terms of their contract." *Format Corp. v. Widewaters Prop. Dev. Corp.*, 162 F. App'x 168, 170 (3d Cir. 2006) (nonprecedential). Courts only disregard the plain language of a contract where a party can show applying the plain meaning of that language would lead to a result that is both absurd and unreasonable. *See Format Corp.*, 162 F. App'x at 170. Defendants present no arguments as to why applying the plain language of the contract would be unreasonable and simply assert that Spudis's hiring

Accordingly, the Court finds that, based on the plain terms of the Agreement, Defendants breached a contractual duty. Spudis further alleges that Metro's breach caused him damages because he did not receive the payments and benefits he was entitled to receive as President and CEO for the remainder of his term. (Doc. 1-3, at 10-11). Thus, Spudis states a claim for breach of contract because he alleges that the Agreement existed, that Metro breached the Agreement by violating its clear and unambiguous terms, and that the breach caused him damages. *Cessna*, 753 F. App'x at 1128. Defendants motion to dismiss Count I is **DENIED**.

B. SPUDIS STATES A CLAIM UNDER THE FMLA.

In Count II, Spudis alleges that Defendants are liable under the FMLA because they 1) interfered with his requests for FMLA leave and 2) retaliated against him for requesting FMLA leave. (Doc. 1-3, at 11-14). The FMLA is a is a federal statute which entitles qualifying employees to up to "12 workweeks of leave during any 12-month period" due to qualifying events such as "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612 (a). Employers may be liable under the FMLA for either interfering with an employee exercising their FMLA rights or for retaliating against an employee for exercising their rights. *See Ross v. Gilhuly*, 755 F.3d 185, 191-94 (3d Cir. 2014). Defendants aver Spudis fails to state a claim under either theory. (Doc. 4, at 17-21).

---

authority extending to potential supervisors would be absurd. (Doc. 8, at 8-9). The Court cannot conclude, based on Defendants' assertion, that a clause providing that a CEO is responsible for all a company's hiring decisions is inherently unreasonable. *See Meyer v. Delaware Valley Lift Truck, Inc.*, No. CV 18-1118, 2021 WL 1923019, at *7 n.4 (E.D. Pa. May 13, 2021) (rejecting an absurdity argument where a defendant merely asserted that applying the plain language of an agreement would lead to an "absurd result" without providing any reasons as to why applying the plain language would be unreasonable).

### 1. Interference

Spudis alleges Defendants violated the FMLA by interfering with him exercising his rights under the FMLA. (Doc. 1-3, at 11-13). Defendants aver that Spudis fails to state a claim for FMLA interference because he does not allege Defendants actually withheld FMLA benefits. (Doc. 4, at 17-19).

To state a claim for FMLA interference, a plaintiff must allege that 1) they were an eligible employee under the FMLA, 2) their employer was subject to the FMLA, 3) they entitled to FMLA leave, 4) they provided their employer with notice of their intention to take FMLA leave, and 5) their employer denied them FMLA benefits they were entitled to under the FMLA. *See Burbach v. Arconic Corp.*, 561 F. Supp. 3d 508, 517 (W.D. Pa. 2021). Defendants only challenge the final requirement, that they denied Spudis FMLA benefits. (Doc. 4, at 17-19). Spudis counters that he states a claim for interference because he alleges Defendants terminated him one day after he requested FMLA leave. (Doc. 7, at 23).

"An interference action is not about discrimination[;] it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005). A plaintiff must allege that "FMLA benefits were actually withheld." *Ross*, 755 F.3d at 192; *see Hershey v. Pennsylvania Dep't of Transportation*, No. 1:21-CV-0506, 2023 WL 6442074, at *4 (M.D. Pa. Sept. 29, 2023). A plaintiff fails to state a FMLA interference claim where they do not allege FMLA benefits were actually withheld. *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 246 (3d Cir. 2016); *see also Hershey*, 2023 WL 6442074, at *4. Firing an employee in response to an FMLA leave request constitutes actually withholding benefits. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (stating "firing an employee for a valid request for

11

FMLA leave may constitute interference with the employee's FMLA right"); *see also Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 159 (3d Cir. 2015) (stating the same).

Spudis alleges that he requested FMLA leave on February 28, 2024, and requested leave between February 29, 2024, and March 5, 2024. (Doc. 1-3, at 8). Defendants do not dispute that Spudis was eligible for this leave. (Doc. 4, at 17-19). On February 29, 2024, Adler informed Spudis that he was "no longer employed as the President and CEO of [Metro]." (Doc. 4, at 8). Defendants aver that Spudis was not terminated on February 29, 2024, and he continued to take leave after that point. (Doc. 4, at 17-19). However, at this early stage, the Court must accept all allegations in the complaint as true and make all inferences in favor of Spudis. *Jordan*, 20 F.3d at 1261. Based on the allegations in the complaint, the Court finds that Adler alleges that Defendants terminated him on February 29.

Spuds alleges that after Adler informed him that he was no longer employed as President and CEO, Metro locked Spudis out of his work email by March 4, 2024, and told him that he could return to the company in an unspecified role. (Doc. 1-3, at 8-9). While Spudis alleges that he continued to request leave, he also alleges that he repeatedly asked Metro's human resources about the status of his employment and that human resources would not answer him. (Doc. 1-3, at 9). Spudis further alleges that on March 29, 2024, Metro reiterated that Spudis may return to Metro in an unspecified role but only if he abandoned his FMLA requests. (Doc. 1-3, at 9). Making all inferences in Spudis's favor, the Court finds Defendants terminated him because Adler explicitly told him that he was "no longer employed" in the only role in which he served and did not tell him that he was instead employed in another role. (Doc. 1-3, at 8-10). Thus, Spudis states a claim for interference because he alleges that Defendants fired him shortly after he requested medical leave and

before he was able to use all of that leave through March 5, 2024. (Doc. 1-3, at 8); *see Erdman,* 582 F.3d at 509; *see also Hansler*, 798 F.3d at 159. Defendants' motion to dismiss Spudis's FMLA interference claim is **DENIED**. (Doc. 3).

### 2. Retaliation

Spudis alleges Defendants violated the FMLA by retaliating against him for exercising of his rights under the FMLA. (Doc. 1-3, at 11-13). Defendants aver that Spudis fails to state a claim because Spudis alleges he was removed from his position as President and CEO before he requested leave. (Doc. 4, at 20-21). Spudis counters that he requested leave on February 28, 2024, and Defendants terminated him on February 29, 2024. (Doc. 7, at 24).

To state a claim for FMLA retaliation, a plaintiff must allege that 1) they invoked their right to FMLA leave, 2) they suffered an adverse employment action, and 3) "'the adverse action was causally related to [their] invocation [FMLA] of rights.'" *Burbach*, 561 F. Supp. 3d at 518 (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012). Defendants do not contest that Spudis alleges he invoked his right to FMLA leave by requesting sick leave on February 28, 2024. (Doc. 4, at 20-21).

Termination and demotion are both adverse employment actions under the FMLA. *See Duncan v. Chester Cnty. Hosp.*, 677 F. App'x 58, 62 (3d Cir. 2017) (nonprecedential) (noting that termination is an adverse action under the FMLA); *see also Hair v. Fayette Cnty. of Pennsylvania*, 265 F. Supp. 3d 544, 566 (W.D. Pa. 2017) (noting that demotion or involuntary transfer could be considered adverse actions under the FMLA). A defendant may plead that an adverse action was casually related to their FMLA leave request by alleging that they suffered the adverse action shortly after they requested leave. *See Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 492 (E.D. Pa. 2018) (stating "[t]he close temporal proximity between

13

Plaintiff's request for FMLA leave and his termination only a month later is sufficient to state a claim at [the pleadings] stage"); *see also Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 544 (E.D. Pa. 2016) (stating "[p]laintiff's amended complaint plausibly alleges retaliation because he was fired immediately after requesting an extension of his FMLA leave").

Spudis alleges that on February 27, 2024, Adler informed Spudis that "another individual was being hired by [Metro] . . . in a position above [Spudis]." (Doc. 1-3, at 8). On February 28, 2024, Spudis requested FMLA medical leave. (Doc. 1-3, at 8). On February 29, 2024, Adler informed Spudis he was "no longer employed as President and CEO of [Metro]." (Doc. 1-3, at 8). Defendants removing Spudis from his position as President and CEO of Metro is an adverse action. *See Duncan*, 677 F. App'x at 62; *see also Hair*, 265 F. Supp. 3d at 566. Defendants aver that this adverse action cannot be causally related to Spudis's FMLA leave request because they made the decision to remove him from his position on February 27, 2024. (Doc. 4, at 20-21). However, at this stage, the Court is bound to the facts as alleged in the complaint, and Spudis alleges that on February 27, Adler only informed Spudis that a new employee would be "placed in a position above" him. (Doc. 1-3, at 8); *see Jordan*, 20 F.3d at 1261 (noting that courts must accept all facts in the complaint as true while evaluating a Rule 12(b)(6) motion). Spudis alleges that Adler told him he was no longer President and CEO the day after he requested FMLA leave. (Doc. 1-3, at 8). While discovery may provide evidence that Defendants decided to terminate Spudis before he requested FMLA leave, for purposes of the instant motion, Spudis sufficiently pleads a causal relationship because he alleges that Defendants terminated him shortly after he requested FMLA leave. *See Long*, 337 F. Supp. 3d at 492; *see also Darby*, 216 F. Supp. 3d at 544. Accordingly, Defendants motion to dismiss Count II is **DENIED**. (Doc. 3).

C. Spudis fails to state a claim under the WPCL.

In Count III, Spudis alleges that Defendants are liable under the WPCL because they denied him "fringe benefits to which [Spudis] was entitled pursuant to his employment with [Metro]." (Doc. 1-3, at 14). Defendants aver that the WPCL does not apply to wages or other benefits a plaintiff would have received if they remained employed, and all of Spudis's alleged unpaid benefits fall under that category. (Doc. 4, at 22-23). Defendants further contend that the WPCL does not apply to additional benefits such as payments housing costs, automobile leases, and country club memberships which Defendants allegedly did not pay Spudis.[4] (Doc. 4, at 25). Spudis counters that the WPCL's definition of wages includes reimbursement for business expenses and other benefits, and he alleges that Defendants failed to reimburse him for such expenses. (Doc. 7, at 25-26, 28-30). Spudis concedes that the WPCL does not apply to future wages but avers that he sufficiently alleges Defendants failed to pay him wages Defendants already owed him. (Doc. 7, at 25-30).

"The [WPCL] provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 204 (1997). To state a claim under the WPCL, a plaintiff must allege that 1) they were contractually entitled to wages as defined by the WPCL, and 2) the defendant did not pay them. *See Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 260 (E.D. Pa. 2020). The WPCL defines wages as "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term 'wages' also includes fringe

---

[4] Defendants also contend that Spudis cannot state a WPCL claim based on unpaid bonuses because the Agreement provides that Spudis is only entitled to a bonus if he works a full year, and Spudis did not work a full year in 2024. (Doc. 4, at 23-24). Spudis responds that he is not seeking liability under the WPCL for unpaid bonuses. (Doc. 7, at 26-27).

benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer." 43 P.S. § 260.2a. Fringe benefits which are considered wages under the WPCL include "separation, vacation, holiday, or guaranteed pay; reimbursement for expenses; union dues withheld from the employes' pay by the employer; and any other amount to be paid pursuant to an agreement to the employe, a third party or fund for the benefit of employes." 43 P.S. § 260.2a.

The WPCL only applies to wages the plaintiff had earned prior to termination and does not apply to wages the plaintiff would have earned had they not been terminated. *See Ely v. Susquehanna Aquacultures, Inc.*, 130 A.3d 6, 13 (Pa. Super. Ct. 2015); *see also Mentecky v. Chagrin Land, L.P.*, No. CV 22-206, 2023 WL 5530305, at *6 (W.D. Pa. Aug. 28, 2023). However, where a plaintiff earned their wages prior to termination, the plaintiff may state a claim under the WPCL even if the wages were "not payable until a future date" after termination. *Riseman v. Advanta Corp.*, 39 F. App'x 761, 765 (3d Cir. 2002) (nonprecedential); *see also Mentecky*, 2023 WL 5530305, at *6.

While Spudis alleges that Defendants were nonresponsive about the status of his employment after February 29, 2024, Spudis alleges that Defendants terminated him on February 29, 2024, and much of his arguments in defense of his breach of contract and FMLA claims rely on his allegation that he was terminated on February 29, 2024. (Doc. 1-3, at 8-10; Doc. 7, at 16-21). Therefore, to state a claim under the WPCL, Spudis must allege that Defendants did not pay him wages he earned before his termination on February 29, 2024. *See Riseman*, 39 F. App'x at 765; *see also Mentecky*, 2023 WL 5530305, at *6. Spudis alleges that on March 27, 2024, Metro's human resources informed him that Metro "was terminating certain of his benefits as President and CEO" but does not allege that Metro did not pay him

16

any benefits he earned prior to his February 29, 2024, termination. (Doc. 1-3, at 9). Spudis also alleges that his employment with Metro entitled him to certain benefits such as housing costs, car payments, and a golf membership and now argues that these benefits were business expenditure reimbursements. (Doc. 1-3, at 6; Doc. 7, at 28-30). However, the Court may only consider allegations in the complaint and the complaint does not allege either that these benefits constituted business expenditure reimbursements or that Defendants failed to pay any specific benefits he earned prior to his termination. (Doc. 1-3, at 6, 9, 14); *see Marks v. Struble*, 347 F. Supp. 2d 136, 148 (D.N.J. 2004) (noting that courts cannot consider allegations raised for the first time in opposition to a motion to dismiss). Accordingly, Spudis fails to state a claim for breach of contract because he does not allege that Defendants failed to pay him any wages he earned prior to termination. *See Riseman*, 39 F. App'x at 765; *see also Mentecky*, 2023 WL 5530305, at *6. Defendants motion to dismiss Count III is **GRANTED**. (Doc. 3).

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (nonprecedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

Leave to amend a WPCL claim is not futile where a plaintiff could allege more specific facts regarding what benefits they earned under a contract prior to termination and that the defendant denied them those earned benefits. *See Deron v. SG Printing, Inc.*, No. 3:11CV1934, 2012 WL 1902577, at *6 (M.D. Pa. May 25, 2012) (dismissing a WPCL claim without

prejudice); *see also Sida v. Pintura Constr. LLC*, No. 2:18-CV-00806, 2018 WL 6258604, at *3 (W.D. Pa. Nov. 30, 2018) (same). Spudis has only filed one complaint and could file an amended complaint alleging what specific benefits Defendants denied him before his termination. Accordingly, the Court grants Spudis twenty-one days to file an amended complaint.[5]

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. (Doc. 3). Defendants' motion is **DENIED** regarding Counts I and II. Defendants motion is **GRANTED** regarding Count III. Count III is **DISMISSED without prejudice**. (Doc. 1-3, at 14). Spudis is **GRANTED** leave to file an amended complaint curing the deficiencies outlined herein, within twenty-one days of the date of the accompanying Order, on or before **Thursday, March 5, 2026**. Failure to do so may result in dismissal of this action.

An appropriate Order follows.

BY THE COURT:

Dated: February 25, 2026          *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

---

[5] Defendants also move, in the alternative to dismissal, for a more definitive statement. (Doc. 3, at 6). Because the Court grants leave to amend, the Court **DENIES** defendants motion for a more definitive statement **as moot**. *See Millan-Heffner v. Gemcraft Homes Grp., Inc.*, No. 23-CV-01252, 2024 WL 6968938, at *10 (M.D. Pa. July 15, 2024) (denying a motion for a more definitive statement as moot where the court granted in part and denied in part a motion to dismiss and granted leave to amend).